## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

MONEKE LATASHA NELMS,          *
                               *
     Plaintiff,                *     CIVIL ACTION NO. 14-00018-B
                               *
vs.                            *
                               *
CAROLYN W. COLVIN,             *
Commissioner of Social Security,*
                               *
     Defendant.                *

## ORDER

Plaintiff Moneke Latasha Nelms (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq*.  On October 15, 2014, the parties waived oral argument, and on October 21, 2014, they consented to have the undersigned conduct any and all proceedings in this case.  (Docs. 16, 18).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.  **Procedural History**

Plaintiff filed an application for a period of disability, disability insurance benefits and supplemental security income on March 3, 2011.[1]  (Tr. 173).  Plaintiff alleged that she had been disabled since November 10, 2010, due to a "slipped disc in back[;] right leg is numb[;] [and] diabetic." (Id. at 172, 175). Plaintiff's applications were denied, and upon timely request, she was granted an administrative hearing before Administrative Law Judge Kim McClain-Leazure (hereinafter "ALJ") on May 11, 2012.  (Id. at 30).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 33).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 45).  On July 16, 2012, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 23).  The Appeals Council denied Plaintiff's request for review on November 20, 2013.  (Id. at 1).  Thus, the ALJ's decision dated July 16, 2012, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties agree that this case is now ripe for judicial review and is

---

[1] Plaintiff filed a prior claim on April 3, 2009, which was denied and was pending at the Appeals Council level at the time that she filed the instant claim.  (Tr. 174).

properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

Whether the ALJ erred in giving "little weight" to the opinions of Plaintiff's treating physician?

## III. Factual Background

Plaintiff was born on March 4, 1980, and was thirty-two years of age at the time of her administrative hearing on May 11, 2012. (Tr. 30, 33, 172). She completed the twelfth grade in school and last worked in 2008 as a housekeeper at a hospital. (Id. at 33, 176).

Plaintiff testified that she suffers from diabetes,[2] high blood pressure,[3] back pain, and right leg numbness. (Id. at 35-36). She described her pain as constant, and she rated it as a seven on a ten-point pain scale. (Id. at 36-37). She stated that she takes pain medication, which makes her drowsy and

---

[2] Plaintiff testified that her blood sugar, on average, tends to run "around 280," but it has shot up as high as 498 and dropped as low as 40. (Tr. 39). A normal fasting blood glucose target range for an individual without diabetes is 70-100 mg/dL (3.9-5.6 mmol/L). The American Diabetes Association recommends a fasting plasma glucose level of 70-130 mg/dL (3.9-7.2 mmol/L) and after meals less than 180 mg/dL (10 mmol/L). See http://www.mayoclinic.org/diseases-conditions/diabetes/expert-blog/blood-glucose-target-range/bgp-20056575.

[3] Plaintiff testified that her high blood pressure is fairly well controlled with medication. (Tr. 40).

dizzy.[4]   (Id. at 36, 42).   She has also had repeated epidurals for pain, but they only made her condition worse.   (Id. at 42).

Plaintiff testified that she cannot work because of her medical conditions and the side effects of her medications. (Id. at 35-36, 42).   According to Plaintiff, she spends the majority of her day lying down.   (Id. at 37).   She takes care of her four-year old daughter alone, except that her mother comes over and helps approximately three days a week.   (Id. at 37-38). She can shop, but she has to do it quickly.      (Id. at 41). Plaintiff testified that she cannot clean, sweep, mop, bathe her child, or put on her child's clothes.   (Id. at 38).

## IV.   Analysis

### A.   Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.   The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[5]   Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).   A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

---

[4] Plaintiff listed her medications as Glipizide (for diabetes), Integra Plus (for low iron), Percocet (for pain), and Xanax (for panic attacks).   (Tr. 199).

[5] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

   **B.   Discussion**

   An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations

provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[6]   20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 10, 2010, the alleged onset date, and that she has the severe impairments of disorders of the back, diabetes, hypertension,

---

[6] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

osteoarthritis, and general myalgias.[7]   (Tr. 17).   The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 18).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a full range of light work.  (Id.).  The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent that they were inconsistent with the RFC.  (Id. at 19).

Given Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform any past relevant work.   (Id. at 22).  However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity for a full range of light work, a finding of "not disabled" was directed by Medical-Vocational Rule 202.20.  (Id. at 22).

In addition to the foregoing, the ALJ summarized

---

[7]  The ALJ concluded that Plaintiff's headaches and anxiety disorder were non-severe.   (Tr. 18).   Plaintiff has not challenged these findings.

Plaintiff's testimony as follows:

> The representative's theory indicates the
> claimant is disabled due to back problems,
> uncontrolled diabetes, hypertension, and
> osteoarthritis with some anxiety. At the
> hearing, claimant testified she has not
> worked since the alleged onset date,
> November 10, 2010. The claimant testified
> she is unable to work due to "slipped disc,"
> right leg numbness, and diabetes, which she
> states includes sugar readings that are both
> high and low, and hand cramps. She
> testified that her pain averages seven on a
> scale of 1-10, and stated she frequently has
> to lie down because of pain, but gets up to
> take her medicine. The claimant testified
> she has a four-year old daughter to care
> for, but indicates her mother assists in
> caring for the child. The claimant
> reportedly has "bad days" three times a
> week, despite medication. She testified
> that her diabetes escalates out of control,
> about five times a week. She indicated her
> hypertension is controlled with medication,
> but escalates on "bad days" due to pain.
> She described cramping in her hands and
> legs, which she relieves by shaking them
> constantly to prevent pain and stiffness.
> The claimant reported she is unable to run
> errands on "bad days." She also reported
> having undergone at least 25 epidurals in
> the past by a pain management (sic), which
> only made her pain worse. The claimant
> stated that a doctor wanted to perform back
> surgery, but she decided against surgery
> because of her daughter's young age. The
> claimant indicated she was seeing Dr.
> Yearwood before she started seeing Dr.
> Barnes, and explained she had difficulty
> getting appointments to see Dr. Barnes. . .
> .

(Tr. 19)

In discussing the relevant medical evidence, the ALJ stated

8

as follows:

> Turning to the medical evidence, records
> from Barnes Family Medical reflect a visit
> on February 23, 2010, with the claimant
> requesting pain medication for back pain and
> myalgias. Treating physician, Stanley
> Barnes, M.D., prescribed Celestone, Toradol
> injections, Percocet, and Xanax. On April
> 1, 2010, the claimant returned, with
> complaints of pain in the right leg, back,
> arm and right shoulder. However, she was
> seen lifting and holding her daughter on her
> right side and was noted as easily weighing
> 20 pounds (Exhibit B5F). Outpatient records
> from Evergreen Medical Center reflect
> treatment for bilateral lower leg pain on
> January 5, 2011 after the claimant explained
> that a metal shelf had fallen, striking her
> legs and feet. However, on examination,
> there was no evidence of bruising, swelling,
> or redness noted. On January 25, 2011,
> returned to the hospital and was diagnosed
> with chronic low back pain; however, a
> lumbar MRI showed only mild degenerative
> facet hypertrophy at L4-5 and L5-S1.
> Claimant was prescribed Prednisone 10 mg and
> Mobic 25 mg (Exhibit B4F). The claimant
> returned to Dr. Barnes on March 21, 2011,
> with persistent pain, including abdominal
> complaints. He referenced the earlier MRI,
> and diagnosed cervical spine disc disease,
> osteoarthritis, lower back pain and
> abdominal pain (probably from diabetic
> hypertensive medication). The claimant
> presented to Barnes Medical Center on June
> 6, 2011, complaining of back pain, left hand
> right leg pain, but denied injury. A nurse
> practitioner noted there was evidence of
> cause for the claimant's hand pain. All
> vital signs were stable, and claimant was
> advised to continue on current medicines
> (Exhibit B10F). On January 30, 2012, she
> returned to Barnes Family Medical with
> additional pain complaints, but indicated
> her pain level overall was 5/10. The
> claimant was administered a B12 and a

Toradol injection for pain (Exhibit B11F). A follow up visit the following month for back and leg pain referenced emergency hospital treatment for a fractured right great toe. On March 8, 2012, the claimant presented to Barnes Family Medical, with complaints of pain and myalgias involving her back, leg and shoulders, but on questioning, acknowledged she had been moving furniture around a lot at home, and that her shoulder had been bothering her for the last few days. On examination, the claimant exhibited painful range of motion of the left shoulder, but there was no evidence of popping, crepitus, heat, redness or swelling. The claimant was prescribed Prednisone for seven days, and Flexeril 10 mg. She was given refills of Percocet, and Xanax, and told to return in one to three months, or as necessary (Exhibit B11F). Although diagnostic imaging in January 2011 showed facet joint hypertrophy at L4-5 and L5-S-1, those findings were mild in severity (Exhibit B4F). Since then, the claimant has not been observed to have ongoing neurologic deficits in the upper or lower extremities, such as reflex and sensory abnormalities, motor incoordination, or significant decreased muscle strength. Finally, there is no indication of joint deformities, gait abnormalities, muscle atrophy, or substantial limited range of motion documented in the record.

As for the claimant's alleged diabetes and hypertension, an assessment of July 14, 2010 from Barnes Family Medical shows the claimant was started on medication for elevated blood pressure without hypertension (Exhibit B5F). On February 21, 2011, Dr. Barnes diagnosed benign hypertension in addition to diabetes as part of his assessment. The claimant indicated her blood sugar had been dropping; but on examination, there was no indication of fever, chills, sweats, nausea or vomiting; all of which are character symptoms (Exhibit

B5F).   Shortly thereafter, the claimant began having recurring abdominal pain.  Dr. Barnes noted on March 21, 2011, that the claimant was a diabetic hypertensive and indicated her medications were perhaps responsible for the recurring abdominal pain.   The evidence shows where the claimant's medicines were adjusted several times over the course of treatment with Dr. Barnes, who concluded, based on his established treating relationship with the claimant that she was an "outpatient management failure" (Exhibit B10F). Subsequently, the claimant admitted to excessive use of Goody powders along with her prescribed medicines, which ultimately lead (sic) to noncompliance as contributing to the claimant's abdominal and related symptoms (Exhibit B11F). Dr. Barnes' nurse practitioner noted during follow-up on November 28, 2011, that the claimant's vital signs were stable, including a blood pressure of 120/70 (Exhibit B10F).   On February 21, 2012, the claimant's vital signs were again stable, and her blood pressure was 130/70 (Exhibit B11F).   There is no indication that diabetes or hypertension resulted in any end-organ damage causing a significant functional impairment, or evidence that either impairment failed to respond appropriately to properly administered conservative treatment.     Medical records have consistently shown that treatment for the impairments has been effective when properly administered.     Moreover, the claimant acknowledged at the hearing, that while her diabetes, treated by Dr. Yearwood remains uncontrolled, her blood pressure was controlled with medication.

Although the claimant testified that Dr. Yearwood is her current treating physician, the record is void of evidence until April 24, 2012, when Amrita Yearwood, M.D., a primary care physician, advised she had treated the claimant for several years.  In

referencing the claimant's history of hypertension, uncontrolled type II diabetes, and back pain, Dr. Yearwood opined that, "due to her multiple medical problems, Ms. Nelms is unable to work" (Exhibit B13F). On May 11, 2012, Dr. Yearwood completed a Physical Capacities Evaluation, indicating that during an 8-hour workday, the claimant can lift/carry 5 pounds occasionally to 1 pound frequently. She can sit, stand, walk for a total of two hours out of eight. Occasionally, the claimant can perform pushing/pulling movements with arms and/or legs; can climb, balance, and can perform gross and fine manipulations, and operate motor vehicles. Dr. Yearwood opined that, on rare occasions, the claimant could bend, stoop, reach in all directions, and work with environmental problems, such as allergies, dust, etc. She indicated the claimant could never work with or around hazardous machinery. She would likely miss more than four days per month from work because of impairments or treatment. A Clinical Pain Assessment indicates that the claimant's pain is severe enough to cause distraction of daily activities or work, cause total abandonment of task, and indicated that medication side effect were severe enough to limit effectiveness due to distraction, inattention, drowsiness, etc. (Exhibit B15F).

As for the claimant's subjective allegations, based on the history of conservative treatment, essentially consisting of routine physical examinations and medication adjustments and refills, the allegations are not fully credible. The claimant testified that her medicines make her drowsy and sleepy[;] however, these complaints are not substantiated in the evidentiary record. Rather, the current medications fail to support any disabling conditions. I find the claimant is not credible at all, as she basically does as she pleases; then complains to doctors about

her back, which does not seem to stop her from doing all kinds of activities, such as moving furniture "a lot" (Exhibit B11F). Evidence from Evergreen Medical Center, including emergency room records in January 2011, document treatment for various complaints (Exhibit B4F), but includes no records from Dr. Yearwood, albeit her report of April 24, 2012, states she had treated the claimant for several years prior (Exhibit B13F). Overall, medical evidence from Dr. Barnes, the established primary physician from April 2010 through February 2011, consistently references the claimant's complaints of back pain, but totally, the subjective complaints resulted in assessments that showed little more than generalized myalgias, benign hypertension, and diabetes, capable of being managed conservatively (Exhibits BSF, B10F, BllF).

In considering the alleged limitations assigned by Dr. Yearwood, she notes the claimant is able to climb ladders and stairs one-third of a workday, yet indicates the claimant can only stand for two hours and can sit for two hours; and can rarely be exposed to environmental factors (Exhibit B15F); however, there is no medically documented basis for the limitations. Nevertheless, in considering Dr. Yearwood's opinion that the claimant is unable to work (Exhibit B13F); even if her records were available, her opinion is completely internally inconsistent with the other substantial evidence of record. It is unfortunate in that Dr. Yearwood failed to provide any basis to support the assigned limitations, particularly since her records, which includes a brief one-page report at Exhibit B15F and the physical/pain assessments, consisting of two-pages at Exhibit B13F, certainly do not support her opinion, which is given little weight. Although Dr. Barnes has not offered a specific opinion regarding the claimant's functional limitations, his statements merit

13

significant weight. Based on Dr. Barnes'
longstanding treating relationship with the
claimant; and his familiarity (along with
that of his nurse practitioner) with the
Claimant's overall medical condition and
limitations, based on his clinical findings;
observations; and consistent treatment
notes, are all factors that give weight to
his opinion statements, which also supports
the residual functional capacity finding.

In sum, the above residual functional
capacity assessment is supported by the
preponderance of the most credible objective
evidence of record, including the claimant's
conservative treatment history and physician
treatment notes.

(Tr. 19-22).

The Court now considers the foregoing in light of the
record in this case and the issue on appeal.

    1.  **Issue**

        **Whether the ALJ erred in giving "little
weight" to the opinions of Plaintiff's
treating physician?**

Plaintiff argues that the ALJ erred in "arbitrarily
substituting her own opinion for that of the treating physician,
Amrita Yearwood, M.D., without following proper legal standards
and without support of substantial evidence for her opposite
conclusion."[8]  (Doc. 13 at 3).  The Commissioner counters that

---

[8] As discussed herein, the record shows that the ALJ gave "little
weight" to the opinions of Dr. Yearwood set forth in the April
24, 2012 letter opining that Plaintiff "is unable to work" and
in the May 2012 Physical Capacities Evaluation ("PCE") and
Clinical Assessment of Pain ("CAP") forms.  (Tr. 22, 342, 347-
48).

the ALJ had good cause to reject Dr. Yearwood's opinions because they are wholly unsupported and inconsistent with the record evidence in this case and that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. (Doc. 14 at 3-4).  Having carefully reviewed the record, the Court agrees with Defendant that Plaintiff's claim is without merit.

Generally speaking, "[i]f a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight."[9]  Roth v. Astrue, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).

"An administrative law judge must accord substantial or considerable weight to the opinion of a claimant's treating physician unless good cause is shown to the contrary." Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985)(citations and internal quotation marks omitted).  "The requisite 'good cause' for discounting a treating physician's opinion may exist where the opinion is not supported by the

---

[9] "Controlling weight" is defined as a medical opinion from a treating source that must be adopted. See SSR 96-2P, 1996 SSR LEXIS 9, *3, 1996 WL 374188, *1 (1996).

evidence, or where the evidence supports a contrary finding." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Id. "[T]he weight afforded a treating doctor's opinion must be specified along with 'any reason for giving it no weight, and failure to do so is reversible error.'" Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

The record in this case shows that Dr. Yearwood saw Plaintiff on November 10, 2010, in the hospital emergency room when Plaintiff sought treatment for uncontrolled hypertension, low back pain, and right leg pain. (Id. at 248, 252). Dr. Yearwood discharged Plaintiff approximately one hour later in stable condition with Clonidine (for high blood pressure) and Lortab (for pain). (Id. at 248, 253). The record next shows that Dr. Yearwood treated Plaintiff on five occasions in 2012 (through the hospital emergency room or in her office) for various complaints including hypertension, diabetes, back pain,

cough, congestion, bronchitis, and medication refills.[10]   (Tr. 347-48, 364, 367-69, 379-80).   After an office visit on April 16, 2012, for treatment of leg and back pain, Dr. Yearwood drafted a letter for Plaintiff on April 24, 2012, addressed "to whom it may concern," in which Dr. Yearwood opined that "due to [Plaintiff's] multiple medical problems, [she] is unable to work."[11]   (Id. at 342, 380).   Approximately two weeks later, on May 11, 2012, Dr. Yearwood completed a Physical Capacities Evaluation ("PCE") form in which she opined that Plaintiff could lift/carry only five pounds occasionally and one pound frequently, that she could sit for only two hours in an eight-hour day, and that she could stand/walk for only two hours in an eight-hour day.   (Id. at 347).   In addition, Dr. Yearwood completed a Clinical Assessment of Pain ("CAP") form in which she stated that Plaintiff's pain is "present to such an extent

---

[10]   On April 1, 2012, Dr. Yearwood treated Plaintiff in the emergency room for back pain and elevated diabetes and discharged her approximately one and a half hours later with Lortab and instructions to follow up with her family physician. (Tr. 364-65).   Three days later, on April 4, 2012, Dr. Yearwood admitted Plaintiff to the hospital for two days for treatment of bronchitis.   (Id. at 368-70).

[11]   The letter, in full, consisted of five sentences and stated: "Moneke Nelms has been a patient of mine for several years.   She has hypertension and uncontrolled type II Diabetes.   She has a history of back pain, having had many epidurals done to relieve her pain.   Due to her multiple medical problems, Ms. Nelms is unable to work.   If you have any questions, or if you need any additional information, please contact my office."   (Tr. 342).

as to be distracting to adequate performance of daily activities;" that physical activity will "greatly" increase the pain "to such an extent as to cause distraction from tasks or total abandonment of task[s];" and that "drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." (Id. at 348). Having reviewed the record at length, the Court finds, as the ALJ found, that Dr. Yearwood's opinions are not supported by the record.

First, as the ALJ articulated, there is absolutely nothing in Dr. Yearwood's treatment records to support the debilitating limitations assigned to Plaintiff in the April 24, 2012 letter and the May 11, 2012 PCE and CAP forms. Dr. Yearwood's treatment records reflect nothing more than occasional, conservative treatment of Plaintiff's hypertension, diabetes, and back pain. (Id. at 248, 364, 367, 380, 379).

In addition to being inconsistent with her own treatment records, Dr. Yearwood's opinions are inconsistent with the findings and opinions of Plaintiff's other treating physician, Dr. Stanley Barnes, M.D. The record shows that Dr. Barnes treated Plaintiff from 2008 to 2012 for diabetes, hypertension, and back pain. His records reflect regular, conservative treatment of Plaintiff's medical conditions with medications. (Id. at 265, 272-94, 336-39). Nothing in Dr. Barnes' treatment

notes reflects that Plaintiff's medical conditions resulted in debilitating limitations.   To the contrary, on February 21, 2011, Dr. Barnes assessed Plaintiff with "benign hypertension, osteoarthritis, generalized myalgias, and diabetes," for which he simply adjusted her medications.  (Id. at 272).   Nothing in Dr. Barnes' records reflects any significant functional impairment caused by Plaintiff's hypertension[12] or diabetes.

As for Plaintiff's back pain, on June 9, 2009, Dr. Barnes' treatment notes reflect that Plaintiff was reporting "nonspecific pain" "in one place or another," for which he prescribed pain medication.  (Id. at 280).   Thereafter, Dr. Barnes frequently noted that Plaintiff requested refills on her pain medication too "early."[13]   (Id. at 277, 290-94, 328).

---

[12] As noted previously, at her hearing, Plaintiff acknowledged that her hypertension is controlled with medication.  (Tr. 40).

[13] On May 6, 2008, Dr. Barnes stated that he saw no reason to keep Plaintiff on any pain medication and that he would "give her [an] anti-inflammatory or something to that effect."  (Tr. 285).  On August 3, 2009, Dr. Barnes' nurse practitioner noted that Plaintiff "went to the ER over the weekend with leg pain but they just gave her a Toradol shot and she didn't get any pain medicine so I told her she shouldn't have needed any as it is still early for her last pain medication."  (Id. at 290).  On January 25, 2010, Dr. Barnes stated, "Dr. Rainer [has] recommended no further therapy.  He's not really sure what's going to help her out.  Now I want to put her on some Mobic and before I could even get the words out of my mouth she claimed it wouldn't work so I don't think she's interested in getting any kind of help or anything like that.  Unfortunately she has succumbed to taking the narcotic analgesics.  She's here early."  (Id. at 292).  On June 21, 2010, Dr. Barnes stated, "She needs her pain medicine refilled.  She is about 4 days early.  I have

Plaintiff claimed that repeated epidural injections for pain were ineffective.  (Id. at 42, 281, 289, 291).  She also testified that one of her doctors wanted to perform back surgery, but she decided against surgery because of her daughter's young age.  (Id. at 43).  However, on March 18, 2009, Dr. Barnes noted that Plaintiff wanted to be put in the hospital for her back pain, but he "[saw] no medical reason to do that." (Id. at 282).  Dr. Barnes stated, "[h]er MRI Scan[14] didn't show much of anything so putting her in the hospital is certainly not even a remote option."  (Id.).  On July 6, 2009, Dr. Barnes further noted that Plaintiff had "no back pain with straight leg raises," "no crepitus in the joints," and "no evidence of swelling or edema."  (Id. at 290).  On February 23, 2010, Dr. Barnes noted that the orthopedist to whom he had referred Plaintiff for her back pain, Dr. Clay Rainer, M.D., had

---

told her that she is not to come in early.  It is going to be 30 days or not at all."  (Id. at 294).

[14] On July 2, 2008, Dr. Barnes noted, "This patient comes in with right hip pain.  I'm not really sure what's going on.  We did a scan on her.  Nothing bad."  (Tr. 284).  On October 27, 2009, Dr. Clay Rainer, M.D., the orthopedist to whom Dr. Barnes had referred Plaintiff, noted that Plaintiff's June 2008 MRI showed "*minimal* facet degeneration at L4-5 and L5-S1."  (Id. at 220) (emphasis added).  Almost three years later, on January 25, 2011, an MRI of Plaintiff's lumbar spine again showed "*mild* degenerative facet hypertrophy at L4-5 and L5-S1."  (Id. at 270) (emphasis added).

"basically released" her. [15]   (Id. at 277).   Thus, as the ALJ articulated, in addition to being inconsistent with her own treatment notes, Dr. Yearwood's opinions are inconsistent with the treatment notes of Dr. Barnes and Dr. Rainer and the MRI's taken in June 2008 and January 2011. [16]

Last, as the ALJ articulated, the record shows that Dr. Yearwood's opinions are inconsistent with the evidence of Plaintiff's activities of daily living.   Dr. Barnes observed on April 1, 2010, that, despite Plaintiff's complaints of leg, back, arm, and shoulder pain, she was able to lift and hold her daughter who "[was] probably a good 20 lbs. easily."   (Id. at 293).   At the hearing, Plaintiff testified that she alone cares for her four-year-old daughter, with the exception of help from her mother approximately three days a week.   (Id. at 38). Also, on March 8, 2012, Plaintiff reported to Dr. Barnes' nurse practitioner that her left shoulder was bothering her because

---

[15] As noted, Dr. Rainer found on October 27, 2009 that Plaintiff had only "minimal facet degeneration at L4-5 and L5-S1."   (Tr. 220).   Dr. Barnes' treatment notes on January 25, 2010, reflect that "Dr. Rainer [has] recommended no further therapy.   He's not really sure what's going to help her out."   (Id. at 292).

[16] Dr. Yearwood's opinions are also inconsistent with the treatment notes of Dr. Stephen West, M.D., one of Dr. Barnes' partners, who on March 11, 2009, noted that Plaintiff "wanted me to write her a letter so that she could get out of community service but I refused to.   There is nothing that she has that would prevent her from doing it.   She can do all her community service.   (Tr. 282).

she had been "mov[ing] furniture around a lot at home." (Id. at 338).   This evidence is inconsistent with Dr. Yearwood's opinions, as discussed herein, particularly her opinion in the PCE form that Plaintiff could only occasionally lift five pounds and frequently lift one pound.  (Id. at 347).

Based on the foregoing evidence, the Court finds that Dr. Yearwood's opinions set forth in the April 24, 2012 letter and the May 2012 PCE and CAP forms are inconsistent with the record evidence in this case.   Therefore, the ALJ did not err in failing to give controlling weight to those opinions.   The substantial medical evidence in this case supports the ALJ's finding that Plaintiff can perform a full range of light work.[17]

---

[17] The Court also rejects Plaintiff's argument that the ALJ's determination is not supported by substantial evidence because, without Dr. Yearwood's opinions, the record contains no opinion from a consultative examiner or other medical expert as to Plaintiff's RFC.  (Doc. 13 at 8).  To the contrary, the ALJ has the discretion to order a consultative examination where the record establishes that such is necessary to enable the ALJ to render a decision.  Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988).   The ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination.  Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.").   Likewise, "[t]he ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity." Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 n.5 (M.D. Ala. March 23, 2012) (citing Green v. Soc. Sec. Admin., 223 Fed. Appx. 915, 923 (11th

Therefore, Plaintiff's claim is without merit.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **26th** day of **March 2015.**

_____
     **/s/ SONJA F. BIVINS**
     **UNITED STATES MAGISTRATE JUDGE**

_____

Cir. 2007) (unpublished)); see also Packer v. Astrue, 2013 U.S. Dist. LEXIS 20580, *7, 2013 WL 593497, *2 (S.D. Ala. February 14, 2013) (the fact that no treating or examining medical source submitted a physical capacities evaluation "does not, in and of itself, mean that there is no medical evidence, much less no 'substantial evidence,' to support the ALJ's decision."). Thus, Plaintiff's contention that the absence of a physical RFC evaluation by a medical source means that the ALJ's RFC assessment is not based on substantial evidence is simply incorrect. Moreover, as noted supra, the record contains substantial evidence, including the treatment records of Dr. Barnes, from which the ALJ was able to render a decision.